UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JESSE RAYMOND STEWART,

   Plaintiff,

v.                                               CASE NO. 8:08-cv-393-T-23EAJ

COMMERCIAL VEHICLES OF SOUTH
FLORIDA, INC., et al.,

   Defendants.
_____/

## **ORDER**

The plaintiff sues Commercial Vehicles of South Florida, Inc. (f/k/a Sterling and Western Star Trucks of Tampa, LLC, and Freightliner of Tampa, LLC) ("CVSF"); Freightliner, LLC ("Freightliner"); Bradley W. Prior, Edward R. Costello, and Melbourne L. Wilson; and Oakley Transport, Inc. ("Oakley Transport"). The amended complaint (the "complaint") asserts (1) a claim under 42 U.S.C. § 1985(3) (count one) for violation of the plaintiff's rights under 42 U.S.C. § 1981(a) and the Thirteenth and Fourteenth Amendments and (2) a state-law claim for intentional interference with an advantageous business relationship (count two). The complaint alleges original subject matter jurisdiction of count one under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction of count two. Both Oakley Transport (Doc. 65) and, by separate motion, the remaining defendants (Doc. 66), move for final summary judgment, and the plaintiff responds (Doc. 69) in opposition.

The plaintiff, an African-American, worked as a district finance manager for DaimlerChrysler Services Truck Finance. The plaintiff provided financing services to

certain customers of Freightliner dealerships.  Freightliner, a truck manufacturer, owned Freightliner of Tampa and Sterling and Western Trucks of Tampa (the "dealerships").  In 2003, the plaintiff's territory ran throughout the state of Florida and included the dealerships.  The plaintiff arranged financing options for the dealerships' customers and worked with the dealerships' sales and management personnel.  Oakley Transport was a Freightliner customer in 2003.  The complaint alleges that the defendants conspired "to remove [the plaintiff] from servicing Oakley Transport and other customers of Freightliner of Tampa on account of his race," demanded the plaintiff's reassignment, and requested the substitution of a white employee.

Summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The evidence and the available inferences are viewed most favorably to the non-moving party.  Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotation marks omitted).  The movant bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  If the movant is successful, the burden of production shifts to the non-moving party, who must offer "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not rest on the pleadings but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material issue remains.  Fed. R. Civ. P. 56(e)(2).  A scintilla of evidence is insufficient:

"there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Count one asserts a conspiracy claim under 42 U.S.C. § 1985(3). "The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002) (citation and internal quotation marks omitted). Section 1985(3)'s second element, that is, "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Additionally, to be actionable under Section 1985(3), a conspiracy among private persons "requires an intent to deprive persons of a right guaranteed against private impairment," Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 274 (1993), and the protected right must be consciously targeted rather than merely incidentally affected, Bray, 506 U.S. at 275-76.

"Section 1985(3) . . . creates no rights. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right–to equal protection of the laws or equal privileges and immunities under the laws–is breached by a conspiracy in the manner defined by the section." Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979) (holding that a "deprivation of a right

created by Title VII [of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.] cannot be the basis of a cause of action under § 1985(3)");[1] see also Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir. 1996) (holding that "a violation of the [Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq.] . . . cannot be the basis for a claim under § 1985(3)."). In the context of actions brought against private conspirators under § 1985(3), the Supreme Court has recognized only two rights protected against private impairment: the right to be free from involuntary servitude and the right to interstate travel. See Bray, 506 U.S. at 278.

Although holding that a deprivation of a right created by Title VII cannot form the basis of a claim under § 1985(3), Novotny declined to decide "whether § 1985(3) creates a remedy for statutory rights other than those fundamental rights derived from the Constitution." Novotny, 442 U.S. at 370 n.6. Further, Novotny's reasoning (that allowing a claim under Section 1985(3) based on a violation of Title VII would impair the effectiveness of the enforcement and conciliation scheme created by Congress for claims under Title VII) does not directly apply to a statutory right (e.g., the right to make and enforce contracts under 42 U.S.C. § 1981(a)) for which Congress has established no similar enforcement and conciliation scheme. Accordingly, whether a deprivation of a right secured by Section 1981(a) can be the basis of a Section 1985(3) conspiracy remains unsettled. See Jenkins v. Arcade Bldg. Maint., 44 F. Supp. 2d 524, 532-33 (S.D.N.Y. 1999). However, courts have plausibly concluded

---

[1] See also Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979) ("Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates.").

that, because a claim for race discrimination in employment brought under Title VII cannot form the basis for a § 1985(3) conspiracy claim, the same claim should not survive "simply because it is brought under § 1981." Jenkins, 44 F. Supp. 2d at 533. More important, as Jenkins notes, Justice Stevens's concurrence in Novotny provides powerful support for precluding a Section 1985(3) claim based on a deprivation of rights guaranteed by Section 1981(a). The language and history of the Sections 1 and 2 of the Civil Rights Act of 1971 (the predecessor of 42 U.S.C. §§ 1983 and 1985, respectively) compel the conclusion that "the Congress which enacted both provisions was concerned with providing federal remedies for the deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment." Novotny, 442 U.S. at 382-83 (Stevens, J., concurring) (emphasis added). The congressional concern with redressing constitutional violations strongly suggests that Section 1985(3) was not "intended to provide a remedy for the violation of statutory rights–let alone rights created by statutes that had not yet been enacted." Novotny, 442 U.S. at 385 (Stevens, J., concurring).[2] Finally, the weight of persuasive authority supports the view that Section 1985(3) provides no remedy for a deprivation of rights protected by Section 1981(a).[3]

---

[2] See also Novotny, 442 U.S. at 379 (Powell, J., concurring) (concluding, "For essentially the reasons suggested by Mr. Justice Stevens," that Section 1985(3) should not be construed "to provide a remedy generally for the violation of subsequently created statutory rights" and that "its reach is limited to conspiracies to violate those fundamental rights derived from the Constitution"); Novotny, 442 U.S. at 381 n. (Powell, J., concurring) ("I would take advantage of the present opportunity to make clear that this Civil War Era statute was intended to provide a remedy only for conspiracies to violate fundamental rights derived from the Constitution.").

[3] See Tardd v. Brookhaven Nat. Lab., 407 F. Supp. 2d 404, 413 (E.D.N.Y. 2006) ("Section 1981 cannot form the basis of a conspiracy under Section 1985(3)."); Abdi v. Brookhaven Science Assocs., LLC, 447 F. Supp. 2d 221, 227 (E.D.N.Y. 2006) ("[A]n alleged violation of § 1981 cannot form the basis of a conspiracy under § 1985(3)."); Benton v. Cousins Props., Inc., 230 F. Supp. 2d 1351, 1382-84 (N.D. Ga. 2002), aff'd, 97 Fed. Appx. 904 (11th Cir. 2004) (table decision); Ayers v.

(continued...)

In short, because Section 1985(3) provides no remedy for a violation of rights protected by Section 1981(a), and particularly for rights not protected by Section 1981(a) until long after the enactment of Section 1985(3),[4] count one fails to the extent that it depends on the defendants' alleged conspiracy to impair the plaintiff's rights under Section 1981(a). Further, although alleging generally that the defendants violated the plaintiff's rights under the Thirteenth Amendment "relating to equal protection of the laws and the badges of slavery,"[5] the plaintiff alleges no facts supporting a conclusion that the defendants infringed the plaintiff's right to freedom from involuntary servitude.[6] Finally, the plaintiff cannot premise a private conspiracy

---

(...continued)
Intown Suites Mgmt, Inc., No. 1:05-CV-1528-JOF, 2006 WL 783352, 4 (N.D. Ga. Mar. 21, 2006) ("Plaintiff cannot use 42 U.S.C. § 1985(3) as a vehicle for bringing a 42 U.S.C. § 1981 claim."); Brown v. Philip Morris Inc., 250 F.3d 789, 805-806 (3d Cir. 2001) (noting that the "[t]he great weight of precedential authority . . . supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3) action" but declining to resolve the issue because the plaintiff failed in any event to state a claim under Section 1981 or Section 1982).

[4] The Civil Rights Act of 1991, Pub. L. No. 102-166 § 101, 105 Stat. 1071 § 101 (1991). amended Section 1981 in response to Patterson v. McLean Credit Union, 491 U.S. 164 (1989). Patterson held that Section 1981's protection of the right "to make and enforce contracts" covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process," 491 U.S. at 179, and not "conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations," 491 U.S. at 171 (emphasis added). The Civil Rights Act of 1991 amended Section 1981 to broaden the definition of "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); see also Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994) (Section 1981's prohibition against racial discrimination now "applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations"). The plaintiff's allegations of(a) a conspiracy to interfere with his employment contract describes the kind of "postformation . . . incidents relating to the conditions of employment" not actionable under Section 1981, Patterson, 491 U.S. at 178, as originally enacted.

[5] See Griffin v. Breckenridge, 403 U.S. 88, 105 (1971).

[6] See Sanders v. Prentice-Hall Corp., No. 97-6138, 1999 WL 115517, 3 (6th Cir. Feb. 8, 1999) ("[Plaintiff] does not allege that he was forced to work . . . by threat of either physical force or legal action. Such an allegation is a necessary element of a Thirteenth Amendment claim."); United States v. Kozminski, 487 U.S. 931, 943 (1988) ("[I]n every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction.").

claim under Section 1985(3) on an intent to deprive the plaintiff of rights protected by the Fourteenth Amendment, which rights are not guaranteed against private impairment. Because the plaintiff presents no other basis for his Section 1985(3) claim, the defendants are entitled to summary judgment as to count one.

Accordingly, the defendants' motions for summary judgment (Doc. 65, 66) are **GRANTED** as to count one, and the Clerk is directed to enter a judgment of dismissal as to count one. Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction of the plaintiff's state-law claim.[7] Count two is **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on July 9, 2009.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[7] See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (noting that the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."); Young v. City of Gulf Shores, No. 07-0810, 2009 WL 920302 *1 (S.D. Ala. Apr. 2, 2009) (noting that, although the preference for dismissal under Section 1367(c)(3) is particularly strong when the federal claims have been dismissed in the early stages of a lawsuit, "the preference also applies when the federal claims are eliminated on motion for summary judgment."); Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999) ("If no federal claim survives summary judgment, the court sees no reason why the other claims should not be dismissed or remanded pursuant to 28 U.S.C. § 1367(c)(3).").